Jan'y Term,        Ex parte Charles James Faulkner.        1866.

## 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

Absent, HARRISON, J.*

### *Ex Parte* CHARLES J. FAULKNER.

| 1 | 269 |
| 43 | 775 |

January Term, 1866.

An attorney at law is not an officer within the meaning of the act of November 16th, 1863, and is not required to take the oath therein prescribed for officers.

*Charles J. Faulkner* applied at the bar of this court to be admitted to practice herein without taking the oath† prescribed by the legislature, November 16th, 1863, claiming that an attorney at law was not an officer within the meaning of that act.

*Mr. Faulkner* in support of the motion, after some preliminary remarks of a general character, said: The question before the court was, whether an attorney at law, duly licensed according to the statutes of the State, and in all other respects qualified, may not rightfully claim admission to the bar of *West Virginia*, without taking the oath prescribed by the act of the 16th of November, 1863?

That act provided that "every person elected or appointed

---

*He was absent on account of sickness, and the remaining judges called *N. Harrison*, judge of the IX circuit, to the bench.

†Be it enacted by the legislature of West Virginia :

The first section of the act entitled "An Act concerning oaths and affirmations," passed June 26, 1863, shall be amended and re-enacted so as to read as follows :

1. Every person elected or appointed to any office of trust, civil or military, shall, before proceeding to exercise the authority or discharge the duties of the same, take the following oath : " I, A. B., do solemnly swear that I will support the constitution of the United States and the constitution of this State ; that I have never voluntarily borne arms against the United States ; that I have voluntarily given no aid or comfort to persons engaged in armed hostility thereto, by countenancing, counseling or encouraging them in the same; that I have not sought, accepted nor attempted to exercise the functions of any office, whatever, under any authority in hostility to the United States ; that I have not yielded a voluntary support to any pretended government, authority, power or constitution within the United States, hostile or inimical thereto ; and that I take this obligation freely, without any mental reservation or purpose of evasion."

to any office or trust, civil or military, shall before proceeding to exercise the authority or discharge the duties of the same, take the following oath." It was unnecessary to read the oath. It was sufficient to say, that it was not an oath of allegiance, nor of fidelity; not designed to purge the person taking it from any present or subsisting disloyalty, nor to secure fidelity to the government in the future; but an oath, retroactive in its operation—*ex post facto* in its requirements, and punitive in its effects. It was designed to operate as a disqualification and punishment for supposed past offences. No conscientious man can take it, who at any period of the war, has had any direct connection with the late insurrectionary movement. Wherever, therefore, it is construed to apply to such attorneys and is enforced, it is a practical revocation of the attorney's license,—a disqualification to the practice of his profession.

The simple inquiry, therefore, is, does the act embrace attorneys at law? If it does, the court will enforce it, if they regard it constitutional. If it does not, the court will not by judicial legislation, extend its application. Courts sit to administer, not to make laws.

The persons required to take the oath are *civil* or *military* officers. It is idle to discuss the question whether an attorney is a military officer, we are therefore narrowed to the inquiry, is he a *civil officer?* If he is not the law does not apply to him.

The term "civil officer" is of frequent occurrence in English and American statutes. Its meaning has been distinctly ascertained by this use for the last two centuries. It is found in the statutes of *Great Britain*, 25 Charles 2, ch. 2; 7 and 8 William 3, ch. 24; 13 William 3, ch. 6. In the constitution of the *United States*, 4th section, 2nd article; in the laws of Congress, July 2nd, 1862, January 24th, 1865; in the statutes of *Virginia*, November 24th, 1794, January 7th, 1818, January 16th, 1819, and in the constitution of *West Virginia*, article 3rd, sections 4, 5, 6, 10. In all these cases where the term is used, it describes a person deriving his authority from the government, directly responsible to

and receiving his pay from the government, and concerned with the business of the government: wherever used, it always by necessary implication, and in some instances by express legislative declaration, excludes an attorney at law. See Story's Commentaries for the meaning of the term civil officer as used in the constitution of the *United States*, from section 399 to 407; 1 Bouvier Law Dictionary, civil officer; Cunningham's Law Dictionary, title officer.

The act of the 16th of November, 1863, is not to be construed as an independent statute, but as the 1st section of the act of the 26th of July, 1863. So construed, it explains itself, and shows the *officers of the State Government* which it was the purpose of the legislature to embrace within its provisions.

Wherever the question, whether an attorney is a civil or public officer has been submitted to the courts, the decision in the tribunals of last resort, has been without any exception, that he is not a civil officer. He referred to Leigh's case, 1 Munford, 468, which being a decision of the supreme court of appeals of *Virginia*, was authoritative and binding upon this court. To the decision of the supreme court of *New York*, 20 Johnson's Reports, and to a recent decision of the supreme court of *Kentucky*, Tenney's Case.

The doctrine that an attorney is not a civil or public officer is recognized in the daily practice of the circuit and supreme courts of the *United States*. If an attorney was an officer, how could such men as *Webster*, *Clay* and *Pinckney*, whilst senators of the *United States*, and *Sergeant*, *Binney* and *Hardin*, whilst members of the House of Representatives, practice in those courts? The 6th section, 1st article of the constitution, declares that "no person holding *any office* under the *United States* shall be a member of either house during his continuance in office. If the qualification of an attorney in the circuit or supreme court of the *United States* is to hold an office under the *United States*, how could they become members of the Senate and House of Representatives? and further, how could they continue to practice in the supreme court, whilst holding their seats in those bodies?

This long established practice by the most eminent expounders of the constitution is a conclusive view of this subject.

Attorneys at law are officers of their respective courts in *England*, whether they are officers of the courts in *Virginia* might admit of some question. Still the point may be conceded without detriment to the application before the court. The re-organized government of *Virginia*, as the British Parliament had done before, and as the Congress of the *United States* has done since, has discriminated in the imposition of its oaths, between civil officers and attorneys at law,—substantially declaring that attorneys at law are not civil officers: Ordnance of the 19th of June, 1861; act of the 10th of February, 1862.

*William Ware Peck*, for the State.

1. The act of November 16th, 1863, is to be construed in the light of surrounding circumstances and of its purpose. The principle is familiar and requires no citation of authority.

2. It is essential to protect the public offices from being filled with a disloyal element, and so exposing the State to usurpation. This is not a *test*, but an important *criterion*, under the enquiry, whether the law is as wide in its scope as is claimed. It is morally obvious that the legislature intended to cover a particular case; but it is claimed that it does not come within the provisions of the statute; and again, mischief would result from a narrow construction; the court will incline to a liberal construction to effectuate the legislative intent and to guard against the mischief; and the inclination will strengthen with the mischief: Sedgwick on the construction of Statutes and Constitutions, 213; 18 Vt.; opinion of judge *D. Polsley*, in *Quarrier* case, October term, 1865, Kanawha circuit.

3. It has been the uniform and immemorial practice of the European governments to apply test oaths to revolutionary movements. The Federal government and the loyal States generally have adopted the principle. The present test oath is a copy of the Federal test oath, with the addition of an oath to support the constitution of this State.

4. The applicant states on the argument that before the organization of this State, he was licensed to practice in *Virginia* and that the reports of that State have his name as counsel in various causes.

Assuming that his name so appears in the *Virginia* reports; that does not necessarily indicate that he appeared there other than *ex gratia*, nor is any evidence beyond that point.

Assuming that he was regularly licensed to practice, in the absence of proof that he has taken the oath prescribed by the act of February 10th, 1862, (pp. 69 and 70, Acts of 61 to 63), it must be assumed that he has not taken it; and that it expired under the operation of the act. He could not practice under it there: how can he here?

If his license survived this act, it expired as to the territory of this State on its organization, it being only a license to practice in the courts of *Virginia;* and this whether it conferred an office or only a franchise.

It is then but a foreign license, and could avail him on application by him only on proof that he is *now practicing under it in Virginia;* sec. 3, Code, page 699. The section *probably* applies only to non-residents, otherwise residents, unable to comply with section 1, would evade it by obtaining licenses in other States. The application must be made under sections 1 and 3 of the Code, same page. Therefore he has not qualified himself to take the oath under the act of November 16th, 1863.

5. *The Act embraces attorneys.*

1. The whole of the act of June 26, beyond its first section is consistent with this. Under the general act as to admission of attorneys, Code, page 699, sec. 1,—the qualifications of the applicant must be established to the court. Then follows the attorney's oath under section 3, then the test oath, which latter may be taken before any of the officers enumerated in the first sentence of section 4, of the act of June 20, though *in practice* it would usually be taken before the judge; being taken it must, pursuant to section 6, be filed in the State department.

2. An attorney is embraced in the act of November 16th

by the import of its terms; whether the wording be "office or trust" or "office of trust." In either case the granting of his license is an *appointment*.

*Appointment* is conferring upon another a right to exercise a given function. It is an exercise of authority, and private or public according as the authority is private or public. If public it is immaterial whether its exercise be by one rather than by another officer or branch of the government. All public appointing power is exercised by hands to which it is delegated for the purpose.

22 New York, 67, matter of *H. W. Cooper*, the court say, that the attorney is *appointed* to his office; that the power of appointment was first exercised by the Governor, then transferred to the courts.

*Civil* is antithetical to *military*. Each embraces private and public affairs. We say a *military* education, which may be private, or say in contradistinction a *civil* education.

The reading should be clearly "office or trust" for the change in the 1st section of the act of June 26th, to the act of November 16th, was plainly intended to introduce a *new oath*, not to apply it to a *new class*; clearly not to *narrow* the class. This harmonizes with the rest of the original act— see sec. 5—as otherwise the penalty prescribed by that section, would apply to more than the rest of the act does. Where a *literal* reading would disturb a harmonious operation of a statute, such reading is not to be adhered to. *In this view an attorney, if he does not hold an office, does hold a trust.*

If the proper reading is "office of trust," it embraces attorneys, because they are public officers. "Office" in a statute means public office: 20 John., 492.

A public officer is one who derives and exercises powers and privileges and is under duties other than a citizen. The status of the attorney squares with this definition. He has universally been recognized as a public officer in the civil law, in the English law, and in the American colonial, Federal and State practice; with but two exceptions in the American practice. The office existed in *England* before the

statute, 4 Hen. 4, chapter 18; but by this statute it was enlarged and systematized, and has with modifications of later acts of Parliament been regulated by it ever since. This statute has been the model for all the American legislation and practice upon the subject. 9 Law Lib. (Dwarris on Stat.,) 46, " all acts in *pari materia* having one object and forming one system are to be taken together."

The following citations show that the status of a lawyer is official—*publicly official*; 1 Cunningham Law Dic., Tit. Attorney, sec. 1; 1 Burns Law Dic., p. 69, Tit. Attorney; 3 Black. Com., 25–29; 1 Kent's Com., 306–308; Barnardiston's Ch. Rep., 178; Wakesly Booth Levinz, 75, Hurst's case, where a mandamus was awarded to restore an attorney to the bar of an inferior court, because he was a public officer.    See case in Thomas Raymond, 56, 74; Kebler, 349, 354, 387, 558, 678, 549; 5 Modern, 432; 4 Bacon's Abr., Tit. Attorney, 474; 7 Bacon's Abr., 279–380; Sid., 155; 1 Jac. & Walker, 440, *Cropley* vs. *Parker;* 4 Burr, 2061; 2 Wils., 325; 2 Atk., 295. *Draper's Co.* vs. *Davis*; Ibid, 298, *Sanderson & Glass*; Hob., 117: 1 Cox Ch. Cs., 112, *Middletcn* vs. *Hall*.

The opposing counsel refers to Stat. 25, Car., 2–3–1672, (Stat. at large, page 377,) as providing oaths of supremacy for all officers, and to Stat., 8 Will. 1696, (same vol. p. 614), as extending the former to lawyers. In 1688, Parliament declared the throne to have been abdicated by the *Stuart* line in the person of *James II*, brother of *Charles II*, the last of the *Stuarts* upon the throne, and thereupon elected *William* to the throne.    Of course no act would thereafter be passed extending any act prescribing an oath of supremacy, &c., to the *Stuart* line—hence we find that the act on page 614, relates to the oaths prescribed in 1st William & Mary, (1688, on page 417 of the vol.)

6 B. & Ald., 232, *Hodgson* vs. *Scarlett*, is cited by the other side.    The court could not have intended to intimate against the theory that the attorney is an officer, for that would have been against the unbroken current of Eng. acts and against all other Eng. cases.    It merely explains the immunity of

speech which appertains to the lawyer, (as per Black. Com. cited above,) which he has, whether representing a client, or as *amicus curiæ*, the public.    1 John. Ca., 181, *People* vs. *Justices of Delaware;* 2 Caines' Rep. 386, matter of *Thomas Addis Emmet*, which shows that the statute or adjuration oath was against the Stuart House or the pretender's claims. 13 William 3, ch. 6; sec. 1, 4 Stat. at large, p. 88, was used in the colonies in swearing in attorneys and counsellors. That the act applies it to officers generally and proceeds to enumerate all lawyers, clerks of courts and notaries, cannot be said by the specific enumeration to favor an idea that lawyers are *not* officers, because the specification embraces clerks and notaries who are officers—the enumeration in fact being in the abundance of caution.    20 Johns., 492; 1 Hopkin's Ch. Rep. 6, *Daniel Wood;* 2 Cow., 13, *Seymour* vs. *Ellison and others;* 5 Denio, 619, *Ray* vs. *Birdseye;* 5 Paige, 311, *Ivre* vs. *Beakley;* 10 Paige, 352, *Merritt* vs. *Lambert;* 3 Barb., 196, *McKown* vs. *Davies;* 22 Barb., 593, *Waters* vs. *Whittemore;* 22 New York, 67, matter of *Henry W. Cooper;* 11 Ohio, 430, *State* vs. *Chaplan;* Rev. Stat. Mass., 1835, pp. 539, 541–2, where the attorney is *classed* as among the "officers of the court," and his oath is described as an oath of office, and binds him to his duties as well to the State as to his client.    The same principle runs through the Federal practice.

· The constitution of the *United States*, article 6, section 3, requires "all executive and judicial officers of the *United States* and of the several States to take the oath to support the constitution of the *United States*."

The act of Congress of June 1st, 1789, 1 U. S. Stat. at large, p. 23, prescribes the form of the oath (sec. 1) to be taken by "all officers appointed or to be appointed under the authority of the *United States*."

The act of Congress of September 24th, 1789, (the judiciary act,) sec. 35, 1 U. S. Stat. at large, page 92, provides for "such counsel and attorneys as by the rules of the said courts (of the U, S.) respectively shall be permitted to manage and conduct cases therein."

Neither the constitution nor the act of June 1st, defined or explained the term officer, nor did the act of September 24th define or explain the term "attorney and counsel." Hence they had to be treated as using them in their then established sense. The terms are legal, technical terms. Constitutions and Statutes employing such terms are to be construed as employing them in their legal and technical sense, unless they disclose an intent to employ them in a different one. Sedgwick on Statutory and Constitutional Laws, pp. 261–3; 1 Kent Com., 462; 18 Barb., 451, *Clark* vs. *City of Utica;* 4 Pick., 405, *Merchants' Bank* vs. *Cook;* 9 Pick., 286, *Maiy* vs. *Raymond;* 24 Pick., 296, *Snell* vs. *Bridgewater Gen. Man. Co.*; 3 Wash. C. C. Rep., 209, *The United States* vs. *Jones.*

At its first session beginning the first Monday of February, 1790, (1 U. S. Stat. at Large, page 73, sec. 1, judiciary act,) the supreme court, with these provisions of the constirution and these acts before it, established a rule requiring the attorney and counsellor to take the constitutional oath the same as any officer, and the official oath—the language of the latter being to demean himself "uprightly and according to law"—the expression "according to law" being technical, having an established sense, meaning always, according to the law applicable to the subject matter embraced by it—therefore in the case of an attorney according to the established law of his status; so that this clause in the oath was equivalent to the expression "duly exercise my office." (Rule 4 of Feb. 5, 1790—Laws of U. S. courts, p. 369.)

At its August term, 1791, the court established a rule adopting for the outlines of its practice the practice of the King's Bench and the English Court of Chancery, (rule 7, of August term, 1791, same vol., p. 370.) Hence, 1 Kent Com., 308; 1 Hopkins Ch. R., 6, matter of *Daniel Wood*; and the general practice throughout the States that their constitutions contain the same provision as to State officers, as that of section 3, article 6, of the constitution of the *United States.* For example, the constitution of *New York*, as per 1 Hopk., and the constitution of *West Virginia*, art. 3 sec. 5.

Therefore act of Congress of July, 1862 (Brightly Dig. Supplement, p. 1294) embraces as officers, attorneys and counsellors. But act of Congress, January 24th, 1865, providing that in cases of admission to the bar of the supreme court, the oath in the act of 1862 shall be taken forthwith, and in case of admissions to the circuit and district courts after the 4th of March, 1865, declared them to be holders of office. See the penal clauses of the two acts.

The very occasional instance of a member of Congress arguing a cause in the supreme court may be attributed to oversight or to *ex gratia*.

The statutes of *Virginia* during the colonial existence as far back as 1642—as far as we can trace—and during all its late existence—treat the attorney as a public officer. 1 Henning's Stat. at Large, pp. 275, 302, 330, 349, 482; 2 *Ibid.* 81, 478, 479, 498; 4 *Ibid.* 59, 408, 422, 492–497; 5 *Ibid.* 38–54, 171, 182–2, 326–344, 345, 346–348; 6 *Ibid.* 142–3, 331, 336, 371; 7 *Ibid.* 124, 125, 397, 398–401; 8 *Ibid.* 185, 186, 198, 385; 9 *Ibid.* 119–121, 127, 528–529; 11 *Ibid.* 76, 182 and 183; 12 *Ibid.* 36, 472 and 463, 339; 1 Munf. 479, Leigh's case is manifestly wrong; see in connection with judge T.'s opinion, Hurst's case, Lev. 75; 2 Cunningham's Law Dic., Tit. Mandamus; 3 Black. Com., 265.

Soon after Leigh's case the revised Code of 1819, (1 Rev. Code, p. 297, §§ 1–14) was adopted, describing and treating the attorney as an officer. Code of 1860, p. 699, sec. 1–3, is a re-enactment of the last statute. Constitution of *West Virginia*, art. 11, sec. 8, preserves it. Ordinance of June 19th, 1861, sec. 4, (Acts of 1861–63, p. 41) must be treated as using the term officer in this broad and established sense. Act of February 10th 1862, (same Acts, page 69,) sec. 2, in terms describes the attorney as an officer.

Const. art. 3. sec's. 5, 6, 8, 10, and all other sections speaking of officers must be treated as using the term in its established, legal sense; leaving no room to construe the term officer, in the act of November 16th 1863, in a different sense.

*Mr. Faulkner*, in reply.

Much time had been consumed in discussing questions altogether irrelevant to any issue before the court. The constitutionality of the act of the 16th of November, 1863, had not been questioned, for the simple reason that it was perfectly immaterial to the success of the present application whether the law was constitutional or not. His point was, that the act in question embraced civil and military officers alone, and had no application to attorneys at law.

Much research had been expended in establishing the proposition that attorneys at law were officers of the court. He had no motive to contest that doctrine and might cheerfully concede it so far as all the ends of the present argument were concerned. He thought, however, the counsel for the State, attached an exaggerated idea to the term, "officer of the court," and ascribed an effect and importance to the words, which they did not merit even under the English system. The tipstaffs, turnkeys, ushers, criers, bag bearers and train bearers were all officers of the court precisely in the sense in which the attorneys are.

The enquiry is,—not whether an attorney is an officer of the court, but whether he is an officer of the State government of *West Virginia?* The counsel for the State concedes this to be the real issue, and has sought to maintain that extraordinary proposition by enumerating what he terms "certain badges of official position" which attach to attorneys at law. Many of these *indicia* of office which he enumerated do not appertain to attorneys in *Virginia*. They are not appointed by the court, nor are they removable at the pleasure of the court. Their fees are not regulated and prescribed by law. He obtains, it is true, a license in common with the ministers of the gospel, and he takes an oath to perform his duties as do jurors. The immunity for words spoken at the bar is the privilege of the client, and is enjoyed by the attorney, because derived from the acknowledged right of the party to the suit, whom he represents in court.

If the counsel for the State established his proposition

that an attorney at law is an officer of the State, he proves himself out of court; for the constitution forbids any one to hold *any office*, who has not resided here twelve months. The counsel is a citizen of *New York* and claims no residence here at all.   Upon what possible ground then can he, being a non-resident, claim to appear here in court, if an attorney at law be an officer of the State, and twelve months previous residence be a constitutional qualification for such office?   It would be quite entertaining to see how he can extricate himself from this dilemma.

The effort to show that the decision of the court of appeals of *New York*, reported in 20th Johnson has been overruled, has proved a most signal failure.   No case overruling it has been produced; as a clear and forcible exposition of the principles of the common law it stands untouched, and is now the law in *New York* except so far as it may have been modified by the subsequent constitutions and statutes of that State.

The decision of the supreme court of appeals of *Virginia* pronounced in Mr. Leigh's case, in 1810, has been recognized as the law upon that subject ever since, and the practice throughout the State conforms to it up to the present hour. The *Alexandria* constitution of 1864, now prevailing in that State, declares that no person shall hold *any office* who shall not have taken the test oath therein prescribed; and yet no attorney at law has ever been called upon to take it, because the doctrine announced in Leigh's case still prevails, and an attorney is not regarded as a civil officer.

*Mr. Faulkner* examined in detail the various authorities cited by *Mr. Peck*, to show that they contained no principles in conflict with the views which he sought to impress upon the court.   He referred again particularly to the Statutes 25 Charles 2, and 7 and 8 William 3, in England; the laws of Congress of the 2nd of July, 1862, and 24th of January, 1865, and the ordinance of the 19th of June, 1861, and the act of the 10th of February, 1862, to show how universally it was conceded that an attorney at law was not a civil officer, and that whenever it was deemed proper to require an

attorney to take an oath previously imposed upon a civil officer, it was found necessary to resort to additional legislation to embrace the attorney within its provisions.

He said the court was precluded by all the rules laid down for the proper construction of statutes, from extending the operation of the act of the 16th of November, 1863, beyond the fair and obvious meaning of the words employed by the statute. Dwarris on Statutes, pp. 44, 46.

He claimed that the practice of his profession was one of those fundamental rights secured to him as a citizen of the *United States*, and cited the opinion of justice *Washington* of the supreme court in the case of *Corfield* vs. *Corgell*, 4th Wash. Circuit Court Reports, p. 381.

BROWN, J.   This is a motion on the part of Hon. Charles J. Faulkner to be admitted to qualify and practice as an attorney at law in this court, upon his taking the oath to support the constitution of the United States and the constitution of this State, and the oath of office as an attorney at law; but without taking the oath prescribed by the act of November 16th, 1863, commonly called the test oath: having produced evidence satisfactory to the court, that he was a licensed attorney under the laws of Virginia, and a practitioner in the courts of that State prior to the formation of the State of West Virginia; and claiming to be a loyal citizen of this State, resident in the county of Berkeley, which was accepted as true by the assistant attorney for the Attorney General.   But it is objected for the Attorney General, 1st, That a Virginia license cannot avail the applicant in the courts of this State; 2nd, That if it could, yet he cannot lawfully be admitted to practice as an attorney at law in this court, without first taking the oath prescribed by the-last mentioned act, for persons elected or appointed to any office or trust, civil or military; which oath is commonly called the *test oath.*

As to the first objection, the formation of the State of West Virginia within the territorial jurisdiction of the State of Virginia, was a *coup d'etat* accomplished in con-

formity to the laws of the mother State; and our constitution provides that, the laws of the old State not in conflict with the constitution, shall continue in force in the new, until altered or repealed by the legislature. A license, therefore, valid in Virginia, would be equally so in West Virginia, so far as those are concerned who were residents within the bounds of the new State upon its organization. Under this view of the case, no resident attorney of this State was required to procure a new license, and nothing appears to place Mr. Faulkner on any different footing from his brethren of the green bag. I think, therefore, that there is nothing in the first objection.

The 2nd objection is of greater import, and has been argued with ability, learning and research on both sides; and I have given to the case a careful consideration.

Great pains have been taken and much learning displayed in the effort to prove that, an attorney at law was an officer; which in one sense cannot be successfully controverted; but the real question is, whether or not, he is an officer elected or appointed to an office or trust within the meaning of the said test oath act?

He was not such an officer within the meaning of the anti-duelling act; which was also a sort of test oath act. So the court of appeals expressly held in Leigh's case in 1 Munford. The anti-duelling act disabled the duelist from "being elected or appointed to any office or post of profit, trust or emolument, civil or military, legislative, executive or judicial, under the government of the commonwealth." The language of the act under consideration is, "every person elected or appointed to any *office of trust*, civil or military, shall, &c." It was admitted in the argument on both sides that, the reading in the act, "office *of* trust," should be "office *or* trust:" the word *of* being a clerical misprision, for the word *or*: and by comparison of the act with the first section of the act of June 26th, 1863, of which it is amendatory, and with 5th section of article 3, of the constitution, there can be little doubt of the fact as conceded.

A distinction has been attempted to be taken between the

two acts, in the application of the rule of construction as given by the court of appeals in Leigh's case; but, I think that it is rather a distinction without a difference, and on principle cannot be sustained. Both acts clearly apply to the same officers, and if one does not embrace attorneys the other cannot.

The construction given to the act in Leigh's case has been received and acquiesced in as the unquestioned rule of law in Virginia from the time it was pronounced to the present. That the case was rightly determined is confirmed by the ruling of the supreme court of New York in the matter of oaths of attorneys: 20 Johns., 492, upon a similar statute; without reference to the Virginia decision.

It is also confirmed by the course of the supreme court, and Senate and House of Representatives of the United States, in permitting senators and representatives in Congress, to practice in that court, and still sit in their respective houses; which they could not have done upon any other rule of construction, than that settled in the cases above cited; because the constitution of the United States, which they all swore to support, declares that, "no person holding any office under the United States shall be a member of either house during his continuance in office." If then, an attorney at law is, as contended for by the contestants, an officer, and when admitted to practice in the supreme court of the United States is an officer under the United States, within the meaning of the constitution, then he could not be a member of either house; nor sit in those bodies during his continuance in his civil office of attorney at law. To do so would be such a high offense, that it cannot be supposed to have passed unobserved or unthought of by the many eminent lawyers, statesmen and jurists, who have habitually done the like from the commencement of the government to the present time, without reprehension in a single instance. Again, the act of Congress of July 2nd, 1862, requiring "every person elected or appointed to any office of honor or profit under the government of the United States, either in the civil, military or naval departments of the public ser-

vice, excepting the President of the United States," to take and subscribe the congressional oath therein prescribed, has no where been held or contended to include attorneys at law. The test oath prescribed by the act of November 16th, 1863, is almost a transcript, *mutatis mutandis*, from the congressional test oath, with some additions of a local nature.

On January 24th, 1865, a little less than three years after the passage of the former act of July 2nd, 1862, Congress passed another act supplemental to the former act, and so stated in the title to be supplemental to the former, requiring attorneys to take and subscribe the oath prescribed in the former act. But one reason can be given for the passage of this latter act, and that is, that the former did not embrace attorneys. Here then was congressional and legislative interpretation of the act from which our test act was taken; and it is manifest that the judges of the Federal courts throughout the country must have taken the same view of the former act; otherwise, they would have enforced it against all their attorneys, and thus have prevented the necessity for passing the latter act.

Again, the act of 1788, (12 Hen. Stat. at Large) which, though pruned by subsequent legislation and revisal of much of its verbosity, still stands on the statute book in all its substantial elements the law of to-day, prohibiting all persons holding any office or trust under the government of the United States, from holding any office or trust under the commonwealth, whether civil or military, legislative, executive or judicial, with the exception that members of Congress may be justices of the peace, and certain other exceptions therein specified, among which attorneys are not named nor included. If, therefore, attorneys at law were officers as contended for by the assistant Attorney General, no member of Congress, nor attorney practicing in the supreme or any circuit or district court of the United States, could hold any office or trust, civil or military, under the commonwealth of Virginia, nor of this State; nor be allowed to practice as an attorney in the courts of either State. Yet, no such exclusion has, in a single instance, ever been

enforced since the passage of the act of 1788; or ever attempted; an omission so marvelous, if not right, that it would be most difficult indeed to excuse or account for it. Were the act in question of even doubtful construction, a court would hesitate long before giving it a construction that would produce such wide-spread and serious consequences.

Again, the ordinance of the convention of June, 1861, which reorganized the State government that had been usurped by the rebels, required "all officers in the service of the State, or of any county, city or town therof, or thereafter to be elected or appointed for such service," to take the oath prescribed by that ordinance; but it was never held or even contended that attorneys were thereby required to take said oath to entitle them to practice in the courts of the restored goverment of the State; neither were they required so to do by the courts, until the legislature passed the act of February 10th, 1862; by the 2nd section of which they were in express terms required to take the oath prescribed by the said ordinance for officers. Thus it seems clear from the legislation reviewed and considered, that whenever it was the legislative intention to embrace attorneys at law, they are named as such; and when not so intended they are not so named, and are not included by the general terms "all officers elected or appointed, &c."

Viewed therefore, in the light of past legislation and judicial construction so generally acquiesced in, it would seem to be the settled understanding from a very early period of our history that, attorneys at law were not officers of the government either State or national, elected or appointed, within the meaning of any of said acts relative to officers, civil or military; but on the contrary, that they were a profession or class *sui generis;* and though called officers of courts, yet never in the sense of these acts, nor intended to be embraced by them.

It is a well settled principle, admitted by both sides in the argument, that in giving construction to any statute, the legislature must be understood to have used terms and set

phrases in the sense in which those terms and phrases for long years prior, had been understood and received, in relation to a particular subject.   With such understanding universally acquiesced in by our people, the act of November 16th, 1863, was passed without naming attorneys, passed in the light of the express decision of the highest tribunal in the State, standing undisturbed and unquestioned as the law of the land and the only rule of construction in such case.

Can that statute, so passed, be now construed by any other rule of interpretation than that so long and well settled, and so universally recognized and acknowledged?   It cannot be on any principle of reason, justice or sound policy; and the construction contended for by the assistant Attorney General, is still more untenable, when it is remembered that the act, though perhaps not strictly *ex post facto*, is penal in its nature and retrospective in its operation, and should therefore, be construed strictly; yet it is sought to make it embrace by construction, attorneys, when they are not named.

It seems to me impossible to give to the act in question, such a construction, with such surroundings and such antecedents; or even to harbour a suspicion that a solitary member of the legislature that passed it ever dreamed, much less believed, that it embraced attorneys.

I see no reason, therefore, in the 2nd objection, to authorize this court in refusing to permit the applicant to qualify and practice as an attorney and counsellor in this court, upon his taking the oaths required by law—viz, the oaths to support the constitution of the United States and the constitution of this State; and the oath of office as an attorney.

But it may be asked, if an attorney is not an officer elected or appointed, within the meaning of said act, how is it that he is required to take the oaths to support the constitution of the United States and of this State?   It is answered that by the 3rd section of chapter 164, Code of 1860, every attorney is required to take the oath of fidelity to the State; the form of which was prescribed by the 1st section of chap-

ter 13 of the same Code; and by the act of June 26th, 1863, chapter 13, of that Code is repealed, and the form of the oath of fidelity made to correspond with the requirement of the constitution of the United States and the constitution of this State.

BERKSHIRE, President. The controversy we are required to settle has arisen on the application, on a previous day of the term, of Charles James Faulkner, to be admitted as an attorney at law to practice in this court. The said Faulkner claims to be a loyal citizen of the United States and of this State, resident in the county of Berkeley, where he has been residing many years, and was so residing at the time, and for many years antecedent to the creation of the State of West Virginia. He also proved, or offered to prove to the satisfaction of the court, that many years previous to the creation of this State, he had been duly licensed, under the laws of the State of Virginia, to practice law in the courts of that State, and had accordingly so practiced for a long period of time, and also in the supreme court of the United States; and also offered to take the oath to support the constitution of the United States, and of this State, and the oath of office.

But without controverting these facts, an objection was interposed by the Attorney General to the admission of the said Faulkner, upon the ground, *first*, that it did not appear that the said Faulkner had ever taken the oath to support the restored government of Virginia as required by the act of the 10th of February, 1862, whereby, as is claimed, his license became null and void, but if otherwise, that still by the formation of *this* State his license so obtained under the laws of the *old* State necessarily and *ex vi termini* expired and cannot avail him in the courts of the new; and *secondly* and mainly, because the said Faulkner cannot lawfully be admitted to practice in the courts of this State without first taking the additional oath prescribed by the act of the 16th of November, 1863, required to be taken by all persons elected or appointed to any office or trust, civil or military.

The questions involved in this almost unprecedented contest, are assumed to be fraught with great interest and pregnant with momentous consequences to the community at large, and they have accordingly been argued with a zeal and ability fully commensurate with the importance imputed to them by the parties respectively, who have manifested so much interest in their final solution by this court.

The argument has taken the widest possible scope, exhibiting the most commendable industry, thorough research and signal ability, and it affords me great pleasure to add that the very elevated tone of the discussion, marked as it was by the utmost propriety, courtesy and good temper, was alike gratifying to this court and honorable to the distinguished counsel who participated in it.

As I propose to discuss no topic of the law not precisely applicable to the questions under consideration, I will proceed at once to dispose of the objections in the order in which they have been made.

First, then, did the failure of the said Faulkner to take the oath prescribed by the act of the 10th of February, 1862, requiring attorneys residing in the State of Virginia to take the oath therein provided, have the effect to vacate his license? I do not perceive upon what ground it can be so contended. The act itself does not declare his license null, for a failure to comply with its provisions, but only *prohibits* the attorney from *practicing* his profession without first taking the oaths, and subjects him to certain fines and penalties mentioned in the 10th section of chapter 38 of the Code of 1860, in the event such attorney does practice in any of the courts without complying with its provisions. And moreover, the act being a war measure, provides that it should only remain in force from its passage until the end of the war then pending in this country. I think it clear, therefore, that a failure by an attorney to comply with the provisions of this statute while it was in force did not in any way affect or invalidate his license.

Did the formation of the State of West Virginia have the effect imputed to it of *ipso facto* annulling the licenses of all

the attorneys resident within its limits? I am of opinion
that it worked out no such results, and that it could no
more effect the license of an attorney at law than the license
of the merchant or hotel keeper. All licenses, it is most
obvious, derived under the old State, were of necessity con-
tinued and kept alive by the provision of the constitution
of the new State expressly adopting all the laws of the for-
mer not in conflict with its provisions; and to hold other-
wise, as it seems to me, and require the attorneys of the
State—many of whom are gentlemen of great experience
and legal attainments—to go through the formula of a re-
examination in order to procure a *new* license, would be
absurd in the extreme, and very much savors of folly.

I think, therefore, the first objection is not sustained, and
is wholly untenable.

I come now to the second and main objection which has
been so strongly urged and ably argued, namely: is an
attorney at law legally bound to take the oath known as the
*test* oath, before he can be admitted to practice in the courts
of this State?

This question involves the true construction of the act of
the 16th of November, 1863; for if this act embraces attor-
neys at law, then the application of Mr. Faulkner must fail
unless he takes the oath therein prescribed; but if they are
not so included, then there seems to be no impediment in
the way of his admission to the bar of this court.

In the construction of this, as in all other statutes, we are
to ascertain if possible, and effectuate the will or intention
of the legislature, and in order to ascertain the legislative
intent, we are to look to the surrounding circumstances at
the time of the enactment.

Another well established and fundamental rule of con-
struction, cited and relied on by both parties to this contro-
versy, is that all acts and provisions of the law *in pari materia*
are to be taken and considered together. It follows, there-
fore, that in construing the act under examination, we
must look to the object and purpose of the legislature as
gathered from the light of surrounding circumstances, and

as illustrated and explained by the previous legislation of the old State relating to the same subject, and the constitution of this State.

The act of the 16th of November, 1863, it will be perceived, simply amends and re-enacts the first section of the act of the 26th of June, 1863. The first clause of the first section of the former act is a literal copy of the first section of the latter, except that there is a plain typographical error in the first line of the section in substituting the word *of* for the word *or* between the words office and trust, making it read "office *of* trust" instead of "office *or* trust," as it was intended to be. This error is conceded by both parties, and is quite obvious when we consider that the legislature intended to apply a new and additional oath to the *same class* and not to *diminish* the class, as would be the case if taken literally as it stands, as none but officers of trust (if there can be such an *office*) would be embraced, whilst all officers who are not officers of *trust* (constituting as they do much the larger portion of the officers of the State,) would be excluded and absolved from taking the oath therein prescribed.

The act under consideration amending and re-enacting the first section of the act of the 26th of June, 1863, must, of course, bear the same relation to the other sections of the latter act as the first section did before it was so amended and re-enacted. And as the first section of the act of the 26th of June, 1863, before amended, as well as the first clause of the same section as amended, is an exact transcript of the first clause of the 5th section of the 3rd article of the constitution of this State, it follows that they all refer to and embrace the same class of persons and must of consequence receive the same interpretation.

Another rule of construction which I omitted to refer to in its proper connection, is that where the same or similar words are used in a statute which are found in a previous statute relating to the same subject matter, the latter act must receive the same construction as the former. And yet another rule founded in obvious reason and policy, is that

when any people voluntary change their jurisdiction and adopt a *new* one covering the same territory, they, in the absence of any express provision, of necessity adopt or retain the laws of the former in force at the time of the change, so far as they are consistent with the condition of things in the new jurisdiction. And this principle would apply with striking force to the status of West Virginia, even without the express provision found in its constitution adopting and continuing in force, so far as they are not in conflict with its provisions, the laws of the old State at the time of the creation of the new.

With these explanations we come to the precise question to be determined, namely, is an attorney at law, upon a fair construction of the act in question, included in it and therefore bound to take the test oath therein provided? And if so included, is it because he is appointed to execute a civil *trust* or a civil office under the State or government? The former was not much insisted on, nor in my judgment can it be with any show of propriety or reason, for so far as my knowledge extends, it has never been seriously contended, that the position of an attorney was that of a *trustee*, but on the contrary it has been and is insisted that his true status is that of an *officer*, and that he in fact executes an office and not a *trust*.

The sole and vital question then, is, whether an attorney is embraced in the terms *civil officer* in the sense of the statute? Now the statute, it is most obvious, refers *to* and *provides for* the civil officers of the State or government, and to bring an attorney at law within its provisions, it follows that he must fall within the definition of a civil officer of the State. And this, as I understand, was mutually conceded by the learned counsel for the State, who maintained with great earnestness, the proposition that an attorney at law in the popular and long established sense of the term, is a public officer of the government, and is therefore brought directly within the letter and spirit of the act we are considering. Can this proposition be successfully maintained? Is an attorney an *officer*, and if so, is he *such a civil*

*officer* of the government as is contemplated and provided for in the act under consideration?

The view of the question which I have been constrained to adopt renders it immaterial to investigate and undertake to settle the vexed question so much discussed, of the precise status of the attorney in the courts of England, in the State of New York and other States of the Union.

The true solution of the question, as it seems to me, may be readily found in the legislation and adjudications of the State of Virginia, the constitution of this State and the provisions of the act in question; and that a careful examination of these cannot fail to conduct us to correct conclusions, and leave no shadow of doubt on the mind as to the construction the act must receive—namely, that attorneys at law were not intended to be, nor can they by any liberality of construction be brought within the purview of the act of the 16th of November, 1863.

And if we were to undertake to hold otherwise, it will be found, I think, that we would encounter objections and difficulties at every step of the investigation, and if, after exercising all our powers of discrimination and astuteness, we should be able to satisfactorily reconcile one objection, we should very soon be met by another, more difficult and insuperable than the one already overcome.

The act of 1809, known as the anti-dueling act, included all persons elected or appointed to any "office or place, civil or military," (terms similar to those found in our act and evidently embracing the same class,) and it was held, and as I think correctly, by the supreme court of appeals of Virginia in Leigh's case, as early as 1810, that it did not embrace attorneys at law as they were not officers under the commonwealth, within the meaning of that act, and it is abundantly clear that the subsequent legislation of the State relating to offices and attorneys proceeded upon the settled hypothesis that attorneys at law were *not* deemed officers of the State or government. To hold otherwise we must convict the legislature of the unaccountable folly of intro-

ducing and perpetuating for more than half a century and for no conceivable reason, the utmost discord and confusion in the law, by legislating under two distinct heads for the same class—namely, attorneys at law—while under *one* head (that relating to the officers of the State,) under which it is claimed attorneys are embraced, they are no where mentioned, whilst under the other head, (that relating to attorneys,) no other class or subject is referred to, but the whole status of the attorney is fully defined and regulated while at the same time there is the most direct and irreconciliable conflict between the various sections and provisions of the two heads. The antagonisms between these sections will appear so obvious to any one who will carefully examine and compare them as to render it unnecessary to refer to them in detail. A few only must be sufficient to remove all doubts. For example: The first section of chapter 12 of the Code of Virginia, 1860, known as the anti-dueling act, provides that any person who fights or engages in a duel, is rendered incapable of holding any office or post, civil or military, legislative, executive or judicial, under the government of the commonwealth. The terms here used are the same as those found in the original act, under which Leigh's case was decided, except the word *post* is substituted for the word place in the original act, and of consequence embraces the same class. The 4th section of the same chapter declares that any person holding any such position as is mentioned in the 1st section, who shall be convicted and sentenced for felony, shall *ipso facto* forfeit his office and be henceforth incapable of acting therein under his previous election or appointment. Now by the 5th section of chapter 164, Code of 1860, p. 699, it is provided that "any court before which any attorney has been qualified, on proof being made to it that he has been convicted of any felony *may* (or course may not) supersede his license."

Again, the 11th section of chapter 13 of the Code of 1860, (relating to the oaths and bonds of officers,) page 103, provides that if any person elected or appointed to any office or post shall act in said office or post before taking the

oaths prescribed in the 2nd section of the same chapter, he is subjected to a fine of not less than 100 dollars, nor more than 1000 dollars, while by the 4th section of chapter 164, the same Code, p. 699, an attorney at law who shall practice in any court in the State without first taking the oaths required by law, is made liable to a penalty of 150 dollars for each case in which he shall appear. It would follow, therefore, that the attorney would be subject to this *double* penalty for the same offense, if, as is claimed, he is an officer of the State and included in the act under consideration and the other acts relating to the officers of the government.

These are some of the consequences that would ensue if we give to the act the construction contended for; and there are many other discrepencies equally patent, but I shall not stop to pursue the investigation further.

I will only add, that coming down to the constitution of the State of West Virginia, and the various enactments of the legislature relating to the officers of the State (including the act of November 16th, 1863,) the same confusion and discord would ensue, if we adopt the rule contended for, by holding that attorneys at law are embraced in the act under consideration.

By holding as I think we are bound to, that the laws of Virginia and the constitution and laws of this State relating to officers do not include all attorneys at law; the various enactments are perfectly symmetrical and harmonious, while on the other hand if we should hold otherwise, as we are urged to do, the whole system is at once thrown into confusion, becomes inharmonious, disjointed and utterly impossible of any intelligent and rational interpretation. Why then should we disturb this harmony? Why seek by presumptions the most violent, by implications the most unwarrantable, to *force* within the purview of the act a class which it is so evident was not meant to be embraced by it?

I think the objections to the admission of Mr. Faulkner must be overruled.

HARRISON, N., J. dissetiente. This is a motion by Charles James Faulkner, of West Virginia, to be admitted to the bar of this court, without taking the oath prescribed by the act of November 16th, 1863, (see Session Acts of 1863, ch. 106, page 138.) That act provides, that "every person elected or appointed to any office of trust, civil or military, shall, before proceeding to exercise the authority or discharge the duties of the same, take the following oath: "I, A. B., do solemnly swear that I will support the constitution of the United States, and the constitution of this State; that I have never voluntarily borne arms against the United States; that I have, voluntarily, given no aid or comfort to persons engaged in armed hostility thereto, by countenancing, counseling, or encouraging them in the same; that I have not sought, accepted, nor attempted to exercise the functions of any office whatever, under any authority in hostility to the United States; that I have not yielded a voluntary support to any pretended government, authority, power or constitution within the United States, hostile or inimical thereto; and that I take this obligation freely, without any mental reservation or purpose of evasion."

Before proceeding to the main inquiry whether an attorney at law is an officer within the meaning of this statute, there is a preliminary question to be settled; whether the applicant from his own showing is entitled to be admitted to this bar, either with or without taking the oath. He claims admission as a resident lawyer of this State, under a license obtained more than thirty years ago to practice his profession in the courts of Virginia. In his learned and able opinion in the Quarrier case, (page 7,) Judge Polsley, remarks: "The 4th section of 'an ordinance' passed June 19th, 1861, after enumerating a long number of officers, (among which attorneys are not mentioned,) provides that none of them shall proceed to discharge the duties of their several offices, until they take an oath to support the constitution of the United States and to uphold and defend the government of Virginia, as vindicated and restored by the convention which assembled at

Wheeling on the 11th day of June, 1861. On the 10th day of February, 1862, it being doubted whether attorneys were such officers as come within the purview of the ordinances referred to, the legislature of the commonwealth of Virginia, (meaning the legislature of the restored government at Wheeling) passed an act which took effect on its passage, providing 'that before an attorney, who is a resident of this State, shall be permitted to practice his profession in any county of this commonwealth, he shall be required to take and subscribe the oath prescribed for officers, by the ordinance aforesaid.'"

There is no proof before this court, nor does the law presume, that the applicant ever complied with this requirement. It was a condition precedent to his right to use a license previously granted, and without which, had he applied for admission to the bar of any court in this State, whilst that statute was in force, he would, of course, have been refused. In practice at least, if not in law, he was no longer an attorney, until he took that oath. It was a test of fealty to the government which the legislature had a right to require, and which the applicant as an attorney was bound to take. Upon his failing to do so, or rather, during the continuance of such failure, his license became suspended or abeyed, until the act of February, 1862, was complied with, and until that act is shown to have been complied with, he cannot be treated by this court, even as a licensed lawyer in Virginia, under a license whose operation was thus suspended; nor can he be recognized as an attorney at this bar under any license, until he has been rehabilitated or re-licensed as such, according to the provisions of sections 1, 2 and 3 of the Code of Virginia, page 699, which prescribe the mode of proceeding in such cases. My opinion is, that he must either be licensed *de novo*, or show that his original license, once suspended or abeyed, is again in force.

Besides, admitting the validity of that license in Virginia, in order to give it any validity in this State, he would have to show that he was not only duly licensed, but practicing under such license, as counsel or attorney in the State of Vir-

ginia,—which has not been shown.   Code of Virginia, page 699, section 3.

I am, therefore, of opinion, that Mr. Faulkner lost his status as a Virginia lawyer, by failing to take the oath prescribed by the act of February 10th, 1862, and that there is nothing in the record which restores that status, or which shows that he is now a properly licensed attorney, either there or here, according to the laws of West Virginia.

2nd.   Assuming the applicant to be duly licensed as an attorney, is he bound as such, before he can properly be admitted to this bar, to take the oath prescribed by the act of November 16th, 1863?   This question turns entirely upon the construction of the term "officer," in its application to attorneys at law.   Is an attorney at law an officer? Is he an officer of trust?   Is he a civil or military officer? Is he an officer either elected or appointed?   Upon the answer to these questions must depend the fate of this motion.

An attorney, says Bacon, "is one set in the place of another, and is either public, as an attorney at law whose warrant is *talis ponit loco suo talem attornatum*, or private, who has authority given him to act in the place and stead of him by whom he is delegated."

Again—"The person here treated of is an attorney at law, who is appointed to prosecute and defend for his client, and is considered as an officer belonging to the courts of justice, concerning whom there are several statutes and resolutions."   1 Bacon's Abr., page 474, title "Attorney"; 3 Blackstone's Com., 25, 29; 1 Cunningham's Law Dic., title "Attorney"; 1 Burns' Law Dic., page 69; 1 Kent's Com., 306 to 308.

The definition and classification of officers generally, will be found in 7 Bacon's Abri., 279, 280, title "Office and Officers."   From this may be deduced :

1st.   That the word office (*officium*) imports a duty or trust.

2nd.   That all officers are either civil or military, public or private according to the nature of their several trusts.

3rd. That every man is a public officer, who hath any duty concerning the public, and that he is not the less a public officer, where his authority is confined to narrow limits.

4th. That all civil officers are again divisible into political, judicial and ministerial.

5th. That attorneys at law *ex virtute officii*, belong properly to the class of judicial officers.

6th. That they derive their office by appointment.

If these propositions be law, without going any further, do they not settle all the questions in this case? Do they not show beyond all question that an attorney at law is not only an officer, but a civil or public officer, within the definition of that term, and in the sense of the statute? Is he not an officer of trust also? The term office (says Lord Bacon) imports a trust. If this is its general signification, it can hardly lose the character of a trust when applied to the office of attorney—an office, in fact, which in all its bearings and relations, both public and private, may be said to possess the *indicia* of a trust of the highest nature.

It was claimed by Mr. Faulkner at the bar (and, I think, with reason) that by some clerical or typographical mistake, the words "office of trust," as they now stand, were erroneously substituted in the statute for the words "office or trust," as they ought to read. Be it so. This cannot change the purport of the statute. If anything, the act, as thus interpolated, would read more strongly against the applicant, for then, if either an officer or trustee, or if a trustee and not an officer (if the thing were possible) he would be clearly embraced by its provisions. One or the other, (either an officer or trustee) he certainly is. In my opinion, he is both—not only an officer, but an officer of trust in the largest sense. A trust in common parlance, may be said to be a confidence reposed by some one in some one, and for some public or private purpose. It is defined by Mr. Story to be an equitable interest in an estate, as contradistinguished from the legal title. It can hardly be supposed, however, that the statute meant to use the term

"trust" in this narrow sense.    It would scarcely require the test oath of a fiduciary in a mere deed to uses, and not exact it from an attorney on the ground that his office, as such, was not a trust.

I am of opinion that an attorney at law is not only an officer, but a trustee within the meaning of the statute.

3. *Is he either elected or appointed?*    The term "elected," generally speaking, imports a popular election.    The term "appointed" excludes that idea and refers the office or trust to some other source.    Every officer not elected may well be said to be appointed.    Under the law of West Virginia the Attorney General of the State and a prosecuting attorney for each county are the only attorneys who are elected. Even there, it is their peculiar official relation to the public, and not their office as attorney which is the subject of election.    With this exception, if it can be called one, no attorney at law can be said to be elected.    Is he appointed? The law requires, that before a resident lawyer can be admitted to practice he must first obtain a certificate of honest demeanor; that he is over the age of twenty-one; and must also obtain a license or certificate from three judges that he is duly authorized to practice in any of the courts of this State.    Is not this an appointment?    It is a license or permission to practice law without which he would have no right to practice it, without being subjected to heavy penalties.    Is not this an appointment?— quite as much so as a commission from the Governor, or letters patent from the crown.    What is a license or commission, or letters patent, but an appointment?    In England, before the statute of Westmr. 2, chap. 10, all attorneys were made by letters patent under the great seal; and were afterwards admitted by the courts: Bacon's Abr., page 474, title "Attorney."    In Virginia, they were first commissioned by the Governor, but the power to appoint attorneys was soon transferred from the Governor to the judges, where it still exists.    I take it, that an attorney now licensed by our judges, is as much an appointed officer, within the statute, as those who figured during the colonial history of Virginia,

or before the statute of Westminster. Any other construction would be a quibbling upon terms, instead of an application of principles to construction.

I am of the opinion, therefore, that an attorney at law is an appointed civil officer or trustee, within the meaning of the act.

It was argued very ably at the bar, that an attorney at law is not a public officer; and Leigh's case, 1 Munf. 468, and 20 Johns. Rep., 492, were cited in support of this position. I do not think that they sustain it. In Leigh's case, decided 56 years ago, two of the three judges were divided upon the question, and the third (judge Fleming,) in fact, expressed no opinion upon the point. The case in 20, Johns., (decided in 1823,) is not only in conflict with the elementary writers before cited, but with the whole current of decision since that period, in the State of New York: *Ex parte* Wood, 1 Hopkin's Ch. Rep., 6; *Seymour* vs. *Ellison,* 2 Cowen, 13; *Ray* vs. *Birdseye,* 5 Denio, 619; *ex parte* Beakley, 5 Paige, 311; *Merrit* vs. *Lambert,* 10 Johns. Rep., 352; *McKoune* vs. *Davies,* 3 Barb., 196; *Waters* vs. *Whittimore,* 22 Barb., 593; *ex parte* Cooper, 22 New York Rep., 67. Upon the same point see also *State* vs. *Chapman,* 11 Ohio, 430; Rev. Stat. Mass. 1836, 539 to 542; 1 Cunningham's Law Dict., title "Attorney;" 1 Burns' Law Dic., title "Attorney," page 69; Banardiston Ch. Rep., 478; Hurst's case, Thomas Raymond's Rep., 56, 94; same case, Lev., 75; Keb., 349, 359, 387, 549, 558, 678; 5 Mod's Rep., 432; Sid., 152; 1 Jacob & Walker, 440, *Cropley* vs. *Parker;* 4 Burrows, 2061; 2 Wils., 225; Hobart, 117; 2 Atk. 295, *Saunders* vs. *Glass;* Id. 298, *Middleton* vs. *Hall,* 1 Cox Ch. cases, 112. *People* vs. *Justices of Delaware,* 1 John.'s cases, 181; *ex parte* Emmet, 2 Caines, 386. Against this host of high authorities it would seem to be too late at this day to question the proposition, that an attorney is a public officer. His status as such, and as a necessary appendage of the court in the administration of justice, obtained at an early period, both in the Roman and French systems of jurisprudence, and in England as early as the reign of the first Edward. From

that time, and as far back as his distinct civil status can be traced from the *procurator* of the civil law down to an attorney under the Code of 1860, he is treated as a public officer. The 4 Henry 4, ch. 18, recognizing him as a public officer, and enlarging and regulating his public duties, is the leading act, and is the basis of all the English as well as American legislation and decisions on the subject.

4. Next as to his status under the Federal Government.

The constitution of the United States, article 6, section 3, requires all judicial and executive officers of the Federal and State governments to take the oath to support the constitution of the United States. The judiciary act of September 24th, 1789, S. 35, (1 U. S. Statutes at Large, p. 92,) provides that attorneys and counsel may practice in the courts of the United States under rules to be prescribed by the latter. The constitution does not attempt to define "offices," nor the act to define "counsel" or "attorney." They must therefore be taken to use those terms in their accepted legal sense: Sedg. on the Construction of Statutes, &c., pp. 26, 263–268, and the cases there cited. The supreme court, at its first term in February, 1790, adopted a rule requiring attorneys and counsel to take the oath to support the constitution and their own special official oath. This rule has remained in force ever since, and its existence can be reasonably referred to no other idea than that the court understood the constitution and the act in this sense. This is abundantly confirmed by Chancellor Kent, in 1 Kent's Com., 308, and in the matter of Daniel Wood, 1 Hopkins, Ch. Rep., 6. Perhaps the strongest confirmation, as to the Federal practice is to be found in the acts of Congress of July, 1862, and January, 1865—the former applying the test oath to all officers, civil and military; the latter discriminating between the attorneys and counsel of the several Federal courts, as to the time when they shall take the oath prescribed in the former act, and its penal clause declaring them to be holders of office. With a single exception, already stated, the law of Virginia has been one way on the subject. Beginning with a colonial act as early

as 1642, and coming down to the Code of 1860, the attorney, in every aspect of his status, has been recognized and treated, and again and again denominated as a public officer.

See 1 Henning's Statutes at Large, 275, 302, 330, 349, 419, 482; 2 Id., 81, 478 to 479, 498; 4 Id., 59, 360 to 362, 408 to 422, 479 to 507; 5 Id., 38 to 54, 171, 181 to 182, 326 to 348, 473; 6 Id., 140 to 143, 331, 336, 371; 7 Id., 124 to 125, 397 to 401; 8 Id., 185 to 186, 198, 385; 9 Id., 119, 121 to 127, 528; 11 Id., 76, 182 to 183; 12 Id., 36, 339, 472 to 473; 1 Rev. Code of 1819, p. 267; Code of Virginia, (1860,) p. 699.

5. As to the constitution and legislation of West Virginia, in their effect upon this question.

The ordinance of the re-organized government of Virginia, of June 19th 1861, prescribed an oath of allegiance for all officers, which, upon my previous reasoning, embraces attorneys. The act of February 10th, 1862, passed, evidently, as a declaratory act, on this point, in terms, embraces them, as officers. The constitution of West Virginia, art. 3, sec. 5, requires "every person, elected or appointed, to any office or trust, civil or military," to take "the oath to support the constitution of the United States and of this State." The 11th article, section 8, provides, that the laws of Virginia, as in force within the bounds of West Virginia, when the latter State goes into operation, shall be the laws of the State except as repealed or altered by legislation. By those laws, as we have seen from 1642, to 1860, attorneys (with one exception) have been uniformly treated as public officers. I can see nothing in the constitution or laws of West Virginia to warrant a different construction in this case.

In expounding this statute it is proper to look, it seems to me, to the peculiar condition of the country, and to the particular exigencies and necessities which existed when the act was passed. The preamble, or purpose of a statute is sometimes the only key which unlocks its meaning. If it is not allowed to control any clear and express provisions to

the contrary, yet, in a case of doubtful phraseology, in determining the meaning of the statute, the court may well look, and is frequently compelled to look to the mischief it designed to remedy, and to the purpose and policy upon which the act was founded. What were these? When this act, was passed in 1863, rebellion was at its height, civil war was raging throughout the country; and the hands and the hearts of all who are now affected by the operations of the act were then engaged in a most criminal and unwarrantable conspiracy to defeat the very object which the statute was designed to accomplish. That object was to uphold and maintain the Union of the States, and especially this State, then struggling hard for its existence, against those who contemned its institutions, who denied its constitutionality, and who were seeking to involve it in a common desolation as well as crime. It was to keep out of the body-politic *here*, at least for a season, the same mortuary element of secession which was threatening to destroy it elsewhere, and which had already subjected the country to an almost fabulous expenditure, both of blood and money. If this was the policy of the act, how is it possible to reconcile it with this motion? Is it not a contradiction in terms as well as principle to suppose that, whilst clerks, recorders, sheriffs, justices of the peace and other ministerial or judicial officers are admittedly or at least practically embraced by the act, that attorneys are excepted from a rule to the expediency or necessity for which they contributed, perhaps, more than any other class in the community? If a judge upon the bench must take the oath, which is not denied, why should not an attorney at the bar, who, in his various public duties and relations, and especially in his influence upon society, is probably more potential than even the court, be required to take it? It seems to me it would be doing injustice to the legislature to suppose that they intended such a distinction. I do not think that they have made it. The constitutionality of the act has not been questioned. It was a statute *pendente bello*, it is true, but it was not repealed by the return of peace. It is still in force.

With the wisdom or policy of the law, or with the expediency or inexpediency of repealing it, I have nothing to do. I have taken the statute as I found it, and endeavored to give it such a construction as its palpable provisions and obviously intended purpose would seem to warrant.

For the reasons assigned, however reluctant I may be to differ from a majority of the court in this opinion, I think the motion at bar should be overruled.

*Mr. Faulkner was admitted upon taking the oath to support the constitution of the U. S. and of this State, and the usual attorney's oath to honestly demean himself.*